IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br>XP Investimentos CCTVM S.A.,<br><br>Applicant,<br><br>Pursuant to 28 U.S.C. § 1782 for Judicial Assistance in Obtaining Evidence for Use in Foreign Criminal Proceedings Pending in the Federative Republic of Brazil. | Civil Action No. 25-923-GBW |

**MEMORANDUM ORDER**

Pending before the Court is Grizzly Research LLC's ("Grizzly Research" or "Respondent") Motion to Vacate the Court's *Ex Parte* Order Authorizing Discovery Pursuant to 28 U.S.C. § 1782 or, in the Alternative, to Quash or Stay Petitioner's Subpoenas ("Motion"). D.I. 12. Grizzly Research's Motion has been fully briefed (D.I. 13; D.I. 20; D.I. 21). For the reasons herein, the Court denies Grizzly Research's Motion to Vacate, grants-in-part and denies-in-part Grizzly Research's Motion to Quash, and denies Grizzly Research's Motion to Stay.

## I. BACKGROUND

XP Investimentos CCTVM S.A. ("XP Investimentos") is a "prominent Brazilian financial services firm that operates as a broker-dealer and forms a core part of the XP Inc. corporate group." D.I. 3 at 1. XP Investimentos's parent company is XP Inc. *Id.* Grizzly Research is a "Delaware limited liability company that researches and publishes reports on various companies." *Id.* at 2. "Its CEO and sole member is Siegfried G. Eggert ('Mr. Eggert')." *Id.* On or around March 12, 2025, Grizzly Research "published a report (the 'Report') in which it claimed that XP Inc. was engaged in a 'Madoff-like Ponzi scheme.'" *Id.* at 3. After the Report was published, XP Investimentos "engaged the São Paulo office of *Fragoso Advogados* to formally request to the

Attorney General of the State of São Paulo, Brazil, of the Federal Public Prosecutor's Office (the 'MPF'), . . . to initiate criminal proceedings (the 'Brazilian Criminal Proceedings') to investigate whether the publication of the Report constituted the crimes of dissemination of false information about a financial institution and market manipulation." *Id.* XP Investimentos requested discovery in this Court to use "in the Brazilian Criminal Proceedings to obtain all documents and testimonial evidence necessary to support XP Investimentos' claims in the Brazilian Criminal Proceedings against Mr. Eggert." *Id.* Separately, on July 7, 2025, XP Inc. and XP Investimentos filed suit against Grizzly Research and Mr. Eggert in the Southern District of New York for "defamation, trade libel, and tortious interference with business relations." *Id.*

On July 23, 2025, XP Investimentos filed an *ex parte* application under 28 U.S.C. § 1782 in this Court, seeking authorization to serve subpoenas on Grizzly Research. D.I. 1. On August 1, 2025, the Court granted XP Investimentos's application. D.I. 5. On August 5, 2025, XP Investimentos served Grizzly Research with the subpoenas. D.I. 13 at 2. On September 30, 2025, Grizzly Research filed the present Motion. D.I. 12.

## II. LEGAL STANDARDS

### A. 28 U.S.C. § 1782

Under 28 U.S.C. § 1782, district courts have discretion to grant applications for discovery to be used in a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). A court presented with a § 1782 application must, as a preliminary matter, "first decide[] whether [the three] statutory requirements [of § 1782] are met." *In re Biomet Orthopaedics Swtz. GmBh*, 742 F. App'x 690, 694 (3d Cir. 2018). The statutory requirements condition § 1782 discovery on a showing that (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign

or international tribunal; and (3) the application is made by an interested person. *Pinchuk v. Chemstar Prod. LLC*, No. 13-306, 2014 WL 2990416, at *1 (D. Del. June 25, 2014).

If the court finds that the application satisfies these statutory requirements, the court then considers certain discretionary factors outlined by the Supreme Court in *Intel Corp.*, to determine whether to grant the application. *Biomet*, 742 F. App'x at 694. "A district court is not required to grant a § 1782 discovery application simply because it has the authority to do so." *Pinchuk*, 2014 WL 2990416, at *2.

Rather, in deciding whether the court should exercise its discretion to grant the § 1782 application, the court must carefully weigh the following *Intel* factors: (1) whether the person from whom discovery is sought is a participant in a foreign proceeding; (2) the nature of the foreign tribunal and the character of the proceedings; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and (4) whether the discovery sought is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65. In considering each factor, the district court must remain mindful of the twin aims of § 1782: (1) providing efficient assistance to participants in international litigation, and (2) encouraging foreign countries – by example – to provide similar assistance to our courts. *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12-193, 2013 WL 646236, at *1 (D. Del. Feb. 21, 2013).

**B. Motion to Quash**

Parties subpoenaed through a § 1782 application have a due process right to file motions to quash. *In re Mota*, No. 19-369-MN, 2020 WL 95493, at *1 (D. Del. Jan. 8, 2020) ("[R]ecipients can raise[ ] objections and [otherwise] exercise[ ] their due process rights by motions to quash.") (internal quotations omitted); *see Lae Techs. Hong Kong Ltd. v. Demuren*, C.A. No. 23-2314 (ZNQ), 2024 WL 863464, at *2 (D.N.J. Feb. 29, 2024) ("[A]n order authorizing discovery under Section 1782 may be issued on an *ex parte* application, without prejudice to the subpoenaed party's

right to file a motion to vacate the order and/or quash the subpoena." (citing *In re Yilport Holding A.S.*, C.A. No. 22-3028-ES-AME, 2023 WL 2140111, at *3 (D.N.J. Feb. 21, 2023))); *see also In re Mesa Power Group, LLC*, C.A. No. 2:11-mc-280-ES, 2012 WL 6060941, at *4 (D.N.J. Nov. 20, 2012). This is because "Section 1782 . . . incorporates by reference the scope of discovery permitted by the Federal Rules of Civil Procedure." *Lae Techs. Hong Kong Ltd.*, 2024 WL 863464, at *2 (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999)).

### C. Motion to Stay

Decisions whether to stay a case "are firmly within the discretion of district courts." *Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, No. 17-1687, 2019 WL 126192, at *1-2 (D. Del. Jan. 8, 2019). In determining whether a stay is appropriate, courts consider the following three factors: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage. *See Consumeron, LLC v. MapleBear Inc.*, C.A. No. 21-1147-GBW, 2023 WL 3434002, at *2 (D. Del. May 12, 2023); *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, No. 15-1168, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021).

## III. DISCUSSION

Grizzly Research asserts that the Court should vacate the Court's Order. D.I. 13 at 2. In support, Grizzly Research argues that (1) XP Investimentos's application fails to meet the statutory requirement that the discovery sought be used in a foreign proceeding, and (2) the *Intel* factors favor vacating the Order. *Id.* Grizzly Research also contends that, in the alternative, the subpoenas should be quashed because XP Investimentos's requests "seek documents and testimony protected from disclosure by the federal reporter's privilege, and because they are overbroad and unduly burdensome." *Id.* Furthermore, Grizzly Research requests in the alternative that, "[a]t a minimum,

this action and enforcement of the Subpoenas should be stayed pending the New York Action." *Id.*

The Court analyzes each of Grizzly Research's arguments in turn.

### A. XP Investimentos's Application Meets the Statutory Requirements of § 1782

Grizzly Research claims that the Court should vacate the Order because XP Investimentos's application fails to meet the statutory requirements of § 1782. D.I. 13 at 6-8. In particular, Grizzly Research asserts that the discovery sought is not "for use in a foreign proceeding." *Id.* For the reasons set forth below, the Court disagrees with Grizzly Research.

#### 1. The Application Is "For Use" in a Foreign Proceeding Within Reasonable Contemplation

Grizzly Research contends that XP Investimentos's application does not meet the statutory requirements of § 1782 because XP Investimentos does not seek discovery "for use" in a foreign proceeding. *Id.* at 7. Under § 1782, for discovery to be "for use" in a foreign proceeding, the foreign proceeding must be "within reasonable contemplation." *Matter of Wei for Or. Seeking Discovery Under 28 U.S.C. § 1782*, C.A. No. 18-MC-117, 2018 WL 5268125, at *2 (D. Del. Oct. 23, 2018) (citing *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-485, 2008 WL 4861544, at *11 (D. Del. Nov. 7, 2008)). For a proceeding to be within "reasonable contemplation . . . an applicant must provide reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Id.* (internal quotation marks and citation omitted). Here, given that a criminal investigation is underway, this requirement is met.

Grizzly Research's contention is unpersuasive. As XP Investimentos points out, the meaning of "for use in a proceeding in a foreign . . . tribunal" within § 1782 includes "criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). Here, Grizzly Research concedes that Brazilian authorities have commenced a criminal investigation. *See* D.I. 13 at 7; *see*

*also* D.I. 20 ("Brazilian authorities have assigned a case number and have taken concrete steps in furtherance [of the criminal proceeding]."). The discovery is not being used to "persuade . . . the Brazilian authorities" to initiate a criminal proceeding, as Grizzly Research suggests. *See* D.I. 13 at 7 (quoting *In re Saul Klein*, 2023 WL 8827847, at *9 n.6 (S.D.N.Y. Dec. 21, 2023)). To the contrary, the proceeding has already been initiated—and the fact that it is in its early stages does not signify that the proceeding is not "within reasonable contemplation." *See* D.I. 20 at 3 (collecting cases where discovery was permitted under § 1782 in support of criminal investigations).

For these reasons, the Court finds that XP Investimentos's *ex parte* application satisfies the requirements of 28 U.S.C. § 1782.

**B. The Application Satisfies the *Intel* Factors**

Grizzly Research has only provided argument regarding *Intel* factors (1), (3), and (4). Thus, the Court addresses those factors in turn below, and will not address *Intel* factor (2).

**1. The First *Intel* Factor Weighs Against Grizzly Research's Motion**

The first *Intel* factor considers "whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid." *In re Mun*, No. 22-MC-243, 2023 WL 7074016, at *4 (D. Del. Oct. 26, 2023). Grizzly Research asserts that this factor weighs in its favor for two reasons. First, Grizzly Research contends that it "is clearly a target of the Brazilian investigation," given that the filings in Brazil repeatedly mention Grizzly Research by name. D.I. 13 at 9. Second, Grizzly Research asserts that XP Investimentos's subpoenas are "nominally directed to Grizzly Research, [but] they effectively target [Mr.] Eggert." *Id.*

The Court disagrees with Grizzly Research. *First*, Grizzly Research is not a party to the criminal proceedings in Brazil, nor could it be. *See* D.I. 3, Ex. A (explaining that Grizzly Research "is not a party to the Brazilian Criminal Proceedings, nor is it expected or legally allowed to

become a party to the proceedings" because "legal entities may be held criminally liable only for environmental crimes" in Brazil). Thus, Grizzly Research, as a Delaware entity, is not subject to Brazil's jurisdiction. *See* D.I. 20 at 6.

*Second*, XP Investimentos's subpoenas are directed at Grizzly Research and its "agents, attorneys, accountants[,] consultants, representatives, assignees, and any other individual or entity associated or affiliated with it." D.I. 14, Exs. 1 & 2. The Court recognizes that Mr. Eggert is Grizzly Research's "CEO and sole member . . . ." D.I. 3 at 2. Thus, any discovery sought from Grizzly Research is likely to come from Mr. Eggert as the primary custodian. *See* D.I. 15 ¶ 8. Even with this backdrop, the Court is unpersuaded that the subpoenas "effectively target Mr. Eggert." As XP Investimentos has pointed out, a company and its CEO are "not one in the same" by virtue of Mr. Eggert's executive position. *In re Evenstar Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I Segregated Porftfolio*, 20 Misc. 00418 (CS)(JCM), 2021 WL 3829991, at *11 (S.D.N.Y. Aug. 27, 2021), *aff'd sub nom. In re Evenstar Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I Segregated Portfolio*, No. 20-MC-418 (CS) (JCM), 2021 WL 5498283 (S.D.N.Y. Nov. 23, 2021). Nor does the Court believe that Grizzly Research possesses such information "solely by virtue of its relationship to [Mr. Eggert]," or that the information is "pertinent only to [Mr. Eggert.]" *In re Application of CBRE Glob. Invs. (NL) B.V.*, No. 20-MC-315 (VEC), 2021 WL 2894721, at *10 (S.D.N.Y. July 9, 2021). Rather, the subpoenas are directed to Grizzly Research's activities as an entity, not to Mr. Eggert as an individual. For instance, the listed deposition topics concern Grizzly Research's "members and managers," "sources of income and the nature of [the] business," "sources of funding," and "[i]ndividuals involved in the drafting and dissemination of the Report." D.I. 3, Ex. B, at 9. The fact that Mr.

Eggert may be the principal source of this information "stems from his affiliation with [Grizzly Research], not the other way around." *In re Evenstar*, 2021 WL 3829991, at *12.

The Court is also unpersuaded by Grizzly Research's cites to cases where courts denied a § 1782 application seeking discovery from a non-party where the non-party and party were closely intertwined. *See* D.I. 13 at 10 (collecting cases). Several of those cases involved attorney-client relationships, *see Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004), and others involved scenarios where the opponent to discovery conceded that the documents could be or were being obtained in the relevant foreign proceeding. *See Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 59 (2d Cir. 2024); *In re Jud. Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 2:14-cv-797-GMN-NJK, 2015 WL 3439103, at *7 (D. Nev. May 28, 2015). Thus, the Court finds the circumstances in this action distinguishable from Grizzly Research's case cites. Here, Grizzly Research has not provided evidence that the requested discovery is being sought, or could be sought, in the Brazil proceeding.

For these reasons, the first *Intel* factor weighs against Grizzly Research's Motion.

### 2. The Third *Intel* Factor Weighs Against Grizzly Research's Motion

The third *Intel* factor considers "whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States." *In re Mun*, 2023 WL 7074016, at *3. Grizzly Research claims that this factor weighs in its favor because the subpoenas "attempt to bypass Brazil's strict limitations on discovery," and because the subpoenas contravene U.S. law and policy by seeking premature defamation discovery. D.I. 13 at 11-12. The Court disagrees with Grizzly Research.

*First*, the Court is unpersuaded that the subpoenas attempt to bypass Brazil's limitations on discovery. Much of Grizzly Research's argument relies on the fact that "Brazil provides no

mechanism for private parties to compel production of documents or testimony from criminal defendants." D.I. 13 at 11. But § 1782 "contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding." *Intel*, 542 U.S. at 247. The relevant inquiry is instead whether the application "*conceals* an attempt to circumvent foreign proof-gathering restrictions." *Id.* at 264. Here, given that Grizzly Research is not a participant in the criminal proceedings in Brazil, Grizzly Research has not demonstrated that it could be ordered to produce the requested material without the aid of § 1782. Moreover, the mere fact that Brazil's pretrial discovery rules are more restrictive than those of this Court does not preclude relief from this Court. *See In re the Application of Sauren Fonds-Select SICAV v. For Discovery Pursuant to 28 U.S.C. § 1782*, C.A. No. 2:16-CV-133 (SDW) (LDW), 2016 WL 6304438, at *6 (D.N.J. Oct. 26, 2016); *In re Nokia Techs. Oy*, C.A. No. 23-1395-GBW, 2024 WL 1675025, at *4 (D. Del. Apr. 18, 2024) ("It is not a prerequisite for a § 1782 applicant to exhaust all potential discovery procedures in the foreign proceedings in order to obtain a federal court's assistance under the statute.").

*Second*, the Court is likewise unpersuaded that the subpoenas contravene U.S. law or policy. Grizzly Research cites two concerns regarding U.S. law. The first is that the subpoenas "seek premature discovery that is not available to XP at this early stage of the New York Action." D.I. 13 at 12. In support, Grizzly Research cites to various cases where courts denied applications for pre-litigation discovery and fishing expeditions for other litigation. *See id.* at 12-13. XP Investimentos responds that the cases on which Grizzly Research relies are distinct because those cases concerned situations where petitioners "us[ed] the statute as a means to obtain discovery to determine whether to file a prospective U.S. lawsuit," unlike here, where other litigation is already pending in the Southern District of New York. D.I. 20 at 13 & n.11. The Court agrees with XP

Investimentos. The circumstances differ surrounding anticipatory or premature discovery when a petitioner is deciding to file a lawsuit versus when a lawsuit is already pending. Here, there is no indication that the discovery is being used as a litigation strategy in the New York action, or in anticipation of filing another action.

Grizzly Research's second concern is that enforcing the subpoenas "contravene[s] fundamental First Amendment rights protecting free speech and press freedom." To that end, Grizzly Research cites a case in which a federal court denied a § 1782 application where that application sought confidential information regarding an allegedly defamatory article. D.I. 13 at 14 (citing *In re Green Dev. Corp. S.A. de C.V.*, 2015 WL 10319091, at *4 (D. Md. Oct. 1, 2025)). The Court recognizes the importance of protecting First Amendment freedoms, particularly in the realm of publishing an anonymous article. However, the Court is unpersuaded that such concerns exist here, where the confidential sources on which Mr. Eggert claims the report was based are "former XP employees." D.I. 15 ¶ 7. Given that XP Investimentos is based in Brazil, there is no indication that Grizzly Research's confidential sources would be protected by the First Amendment. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020) ("[F]oreign citizens outside U.S. territory do not possess rights under the U.S. Constitution."). Thus, since Grizzly Research has not provided any basis for the Court to infer that Grizzly Research's confidential sources are protected by the U.S. Constitution, the Court is unconvinced that First Amendment concerns warrant denying the § 1782 Application. *See In re Gliner*, 133 F.4th 927, 934 (9th Cir. 2025) (finding no First Amendment concerns where "no evidence suggests" that an anonymous author was "is a U.S. citizen or is present in the United States").

### 3. The Fourth *Intel* Factor Weighs Against Grizzly Research's Motion

The fourth *Intel* factor addresses "whether the subpoena contains unduly intrusive or burdensome requests." *In re Mun*, 2023 WL 7074016, at *3. The Third Circuit has held that

"Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45." *In re Global Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016). Pursuant to Federal Rule of Civil Procedure 26, the burden of discovery should be proportional to the needs of a case. Fed. R. Civ. P. 26(d)(1). "It is of course true that responding to a subpoena is inevitably a burden, and often an onerous one." *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. 17-1065, 2018 WL 2337133, at *3 (D. Del. May 23, 2018). Grizzly Research claims that this factor weighs in its favor because "the requests seek 'all documents and communications' on various topics without reference to Brazil, and many sweep far beyond the Report itself." D.I. 13 at 19. The Court disagrees. XP Investimentos has limited its requests proportionately to the needs of the proceedings in Brazil, both in time (to January 1, 2024) and in scope (to documents related to Grizzly Research's report on XP Investimentos and its relationships with XP Investimentos's competitors and former employees). *See* D.I. 20 at 16. Thus, the Court does not believe that XP Investimentos's requests exceed the scope of discovery permitted under Rule 26.

Thus, the final *Intel* factor weighs against Grizzly Research's Motion.

### C. The Court Grants-In-Part and Denies-In-Part Grizzly Research's Motion to Quash

In the alternative, Grizzly Research requests that the subpoenas be quashed pursuant to Federal Rules of Civil Procedure 26 and 45. D.I. 13 at 15. *First*, Grizzly Research maintains that the subpoenas are overbroad and burdensome for the reasons discussed *supra*. *Id.* at 18-19. For the reasons discussed *supra*, the Court will not quash the subpoenas on that basis.

*Second,* Grizzly Research contends that the "information sought by the Subpoenas is protected from disclosure by the qualified reporter's privilege." *Id.* at 15. XP Investimentos responds that the information is not covered by the qualified reporter's privilege because Grizzly

Research has not demonstrated that its activities or intent in this case amount to reporting. D.I. 20 at 17-18. XP Investimentos further argues that, even if Grizzly Research is covered by the qualified reporter's privilege, XP Investimentos has overcome the privilege based on the three factors laid out in *Riley v. City of Chester*, 612 F.2d 708 (3d Cir. 1979).

As an initial matter, the Court agrees with Grizzly Research that its actions are covered by qualified reporter's privilege. Qualified reporter's privilege protects those who "1) are engaged in investigative reporting; 2) are gathering news; and 3) possess the intent at the inception of the newsgathering process to disseminate this news to the public" from disclosure of information and sources to the public. *In re Madden*, 151 F.3d 125, 131 (3d Cir. 1998). Mr. Eggert explained in his declaration that Grizzly Research "publishes investigative reports on its website . . . about publicly-traded corporations based on in-depth research and due diligence," and that its reports "have been covered by numerous prominent outlets, including but not limited to Bloomberg, CNBC, The Wall Street Journal, Reuters, Forbes, and Financial Times." D.I. 15 ¶ 5. These actions constitute investigative reporting and dissemination of news. The Court is unpersuaded by XP Investimentos's arguments about whether Grizzly Research has provided sufficient factual support with respect to its status as a reporter in this particular case. *See* D.I. 20 at 17. Mr. Eggert's testimony regarding the nature of Grizzly Research's business is adequate. *See* D.I. 15.

Although Grizzly Research is covered by the qualified reporter's privilege, the Court finds that XP Investimentos has overcome that privilege for some, though not all, of its requests. In order to overcome the qualified reporter's privilege, the party seeking discovery must demonstrate that (1) "he has made an effort to obtain the information from other sources," (2) "the only access to the information sought is through the journalist and her sources," and (3) "the information sought is crucial to the claim." *United States v. Criden*, 633 F.2d 346, 358-59 (3d Cir. 1980).

Regarding the first two factors, the Court is generally persuaded that the nature and scope of the majority of the information sought in the subpoenas renders Grizzly Research the "only source of the materials." D.I. 20 at 19. Perusal of the document requests and deposition topics outlined in the subpoenas indicates that the subpoenas are directed to Grizzly Research, Grizzly Research's report regarding XP Investimentos, and Grizzly Research's relevant relationships with individuals associated with XP Investimentos. *See generally* D.I. 3, Ex. B. Thus, the scope of those requests and deposition topics satisfy the first two factors. However, as Grizzly Research points out, for those requests that seek information regarding communication with third parties, XP Investimentos has provided no evidence that it has made an effort to obtain information from the third parties before requesting the information from Grizzly Research. In particular, paragraphs 7, 8, and 12 of the "Document Requests" section of the subpoenas seek information regarding Grizzly Research's communication with various third parties. D.I. 3, Ex. B, ¶¶ 7, 8, 12. XP Investimentos does not dispute that those requests could be obtained from third parties, nor does it claim that it *has* contacted other parties in search of the requested information. *See* D.I. 20 at 19. Thus, with respect to paragraphs 7, 8, and 12 of the "Document Requests" section of the subpoenas, the Court finds that XP Investimentos has not overcome the qualified reporter's privilege.

With respect to the remaining requests contained within XP Investimentos's subpoenas, having found that those requests meet the first two factors, the Court agrees with XP Investimentos that the information sought in those requests is crucial to its claims in the Brazilian criminal proceeding. The Court is unpersuaded by Grizzly Research's contention to the contrary, which overly narrows "crucial" information to that which proves the specific elements of the accused crimes. *See* D.I. 13 at 18. Even if the subpoenas are not explicitly worded as requesting

information on the elements of the crimes accused of in the Brazilian proceedings, the requested documents are still crucial to understanding whether said elements are present. As relevant to the Brazil proceedings, XP Investimentos accuses Mr. Eggert of engaging in "crimes of dissemination of false information about a financial institution and market manipulation." D.I. 3 at 3. Obtaining information regarding the process that Grizzly Research underwent in publishing the allegedly defamatory report, and the consequences on stock prices and the financial market, is relevant to Grizzly Research's motives and intent regarding any false statements. Thus, the Court finds that XP Investimentos has overcome the qualified reporter's privilege for its subpoenas, with the exception of paragraphs 7, 8, and 12 of the "Document Requests" section.

For these reasons, the Court grants Grizzly Research's motion to quash with respect to paragraphs 7, 8, and 12 of the "Document Requests" section of XP Investimentos's subpoenas, and otherwise denies Grizzly Research's motion to quash the remainder of the subpoenas.

**D. The Court Denies Grizzly Research's Motion to Stay**

Lastly, Grizzly Research moves, in the alternative, to stay this action and enforcement of the subpoenas "until the New York Action concludes." D.I. 13 at 19. Grizzly Research claims that a stay is warranted because XP Investimentos could obtain the requested materials in the New York action, a stay would avoid the costs of premature discovery, and a stay would not disrupt the Brazilian investigation. D.I. 13 at 20.

The Court disagrees with Grizzly Research. Given there is no trial in this action, the primary consideration for the Court to consider is whether a stay would cause XP Investimentos to suffer undue prejudice from any delay or allow Grizzly Research to gain a clear tactical advantage. *See Consumeron*, 2023 WL 3434002, at *2. XP Investimentos claims, and Grizzly Research does not dispute, that "Brazilian authorities are waiting on the outcome of the present case to continue their investigation." D.I. 20 at 20. That consideration weighs in XP

Investimentos's favor. Moreover, the Court is unconvinced that the status of the New York action should bear any weight on this motion, particularly where the principal burden Grizzly Research has identified is the burden on Grizzly Research of preparing for depositions earlier than the discovery stage in the New York action. XP Investimentos's interest in prosecuting the case in Brazil outweighs the burden of producing discovery and preparing for depositions in the New York Action.

Thus, Grizzly Research's motion to stay in the alternative is denied.

## IV. CONCLUSION

For all the foregoing reasons, the Court denies Grizzly Research's Motion to Vacate and Quash, except that the Court will grant Grizzly Research's motion to quash paragraphs 7, 8, and 12 of the "Document Requests" section of XP Investimentos's subpoenas. The Court also denies Grizzly Research's Motion to Stay in the Alternative.

* * * * *

WHEREFORE, at Wilmington this 30th day of September 2026, **IT IS HEREBY ORDERED** that:

1. Grizzly Research LLC's ("Grizzly Research") Motion to Vacate the Court's *Ex Parte* Order Authorizing Discovery Pursuant to 28 U.S.C. § 1782 is **DENIED**.
2. Grizzly Research's Motion to Quash in the Alternative is **GRANTED** with respect to Paragraphs 7, 8, and 12 of the "Document Requests" section of XP Investimentos CCTVM S.A.'s ("XP Investimentos") Subpoenas, and is otherwise **DENIED**.
3. Grizzly Research's Motion to Stay in the Alternative is **DENIED.**

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE